# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ROBERT GALESKI<br>200 Mercer Ave.<br>Bellmawr, NJ 08031 | CIVIL ACTION |
| Plaintiff,<br>v. | CASE NO.: |
| | **JURY TRIAL DEMANDED** |
| CHESTER DOWNS AND MARINA,<br>LLC d/b/a HARRAH'S CHESTER<br>CASINO AND RACETRACK<br>777 Harrah's Blvd.<br>Chester, PA 19103<br>and<br>CAESAR'S ENTERTAINMENT INC.,<br>a/k/a ELDORADO RESORTS<br>1 Caesar's Place Dr.<br>Las Vegas, NV 89109 | |
| Defendants. | |

## CIVIL ACTION COMPLAINT

Robert Galeski (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.     This action has been initiated by Plaintiff against Chester Downs and Marina, LLC d/b/a Harrah's Chester Casino and Racetrack and Caesar's Entertainment Inc., a/k/a Eldorado Resorts (hereinafter referred to as "Defendants") for violations of the Family Medical Leave Act ("FMLA" – 29 U.S.C. §§ 2601, et. seq.), the Americans with Disabilities Act ("ADA" - 42 USC §§12101 *et. seq*), the Age Discrimination in

1

Employment Act ("ADEA"), and the Pennsylvania Human Relations Act ("PHRA").[1]

Plaintiff asserts, *inter alia*, that he experienced unlawful workplace discrimination and retaliation by Defendants. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for various civil rights violations under the FMLA, ADEA and the ADA. There lies supplemental and/or ancillary jurisdiction over Plaintiff's state-law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

3.      This Court also has subject matter jurisdiction via diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and all parties are citizens of different states.

4.      This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. He is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file his lawsuit in advance of same because of the date of issuance of his federal right-to-sue letter under the ADA/ADEA. Plaintiff's PHRA claim however will mirror identically his federal claims under the ADA and ADEA.

5.     Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

6.     Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted his administrative proceedings before initiating this action by timely filing his Charge with the EEOC, and by filing the instant lawsuit under within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

7.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

8.     Plaintiff is a 67-year-old adult male, with an address as set forth in the caption.

9.     Chester Downs and Marina LLC ("Defendant Chester") is a casino and racetrack located in Chester, PA.

10.     Caesar's Entertainment Inc. ("Defendant Caesar") is an international hotel and casino company that owns and manages dozens of locations across the world and is located in Las Vegas, NV.  Defendant Caesar owns and operates Defendant Chester.

11.     Defendants should be considered Plaintiff single, joint and/or integrated employer as both entities have overlapping management, operations, business and/or financial interests and controlled the terms and conditions of Plaintiff's employment.

12. At all times relevant herein, Defendants acted by and through their agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. Plaintiff is a 67-year-old adult male.

15. Plaintiff was hired by Defendants on or about June 28, 2010 and, in total, worked for Defendants for nearly 16 years, until his unlawful termination on or about April 16, 2026.

16. During his employment, Plaintiff held the title of Table Games Supervisor.

17. Plaintiff was praised for his work, issued raises and positive performance evaluations.

18. Plaintiff was well qualified for the position he held, as evidenced by his 16 years of satisfactory performance and experience with Defendants.

19. Toward the end of Plaintiff's employment with Defendants, he was primarily supervised by Richard Orpeza (Assistant Shift Manager) (*hereinafter* Orpeza), Linda Quarles (Shift Manager) (*hereinafter* Quarles), Robert Barger (Director of Table Games)(*hereinafter* Barger), Zara Alayan (Vice President)(*hereinafter* Alayan) and Ryshona Fontaine (Human Resources Director) (*hereinafter* Fontaine).

20.    Plaintiff suffers from numerous medical conditions, including but not limited to anxiety and panic disorders, skin and mouth cancer, hypertension, severe sleep apnea, plaque buildup in his heart, and other heart-related medical issues.

21.    These medical conditions affect and interfere with Plaintiff's bodily functions and daily activities, including causing severe mouth dryness or "cotton mouth," pain in the neck and chest, cardiovascular functioning, breathing, swallowing, physical endurance, focus, blood circulation, sleeping, and, at times, working.

22.    Plaintiff has obtained ongoing medical treatment for these conditions, including visits to the doctor, medication, hospitalizations, and the removal of two salivary glands in his mouth.

23.    Plaintiff has suffered from the aforementioned health conditions for years and has required the use of FMLA leave in the past, but over the course of approximately 6 months prior to Plaintiff's unlawful termination, Plaintiff's health deteriorated significantly.

24.    During the last six months of his employment (from in or about late 2025 to April 2026), Plaintiff used intermittent FMLA leave/time off from work, including approximately 5 to 8 times per month in order to see a cardiologist, a pulmonologist, receive multiple CT scans, and treat both his severe sleep apnea and a plaque buildup in his left artery, among other things.

25.    Defendants made derogatory comments about Plaintiff's use of FMLA leave, including sarcastically saying to Plaintiff (the day after he returned from using an FMLA day) "nice of you to come to work today" and other demeaning comments.

5

26. Defendants also made negative comments about other employees' use of FMLA leave, including complaining about employees' use of FMLA leave and saying things like "he called out on FMLA again," "he calls out every Saturday on FMLA."

27. In the one year preceding this medical leave, Plaintiff worked at least 1,250 hours with Defendants.

28. Plaintiff informed Defendants' management about his medical conditions and need for FMLA leave.

29. Defendants' management was also made aware of Plaintiff's FMLA requests and approvals from Plaintiff and Defendants' 3rd party FMLA leave administrator (Sedgwick).

30. In the years preceding Plaintiff's more significant/recent use of FMLA leave, Plaintiff was subjected to unfair and disparate treatment from Defendants compared to his younger, non-disabled coworkers on a regular basis.

31. For example, in or about the fall of 2024, Plaintiff was accused of discussing politics with patrons.

32. When Plaintiff requested further details about the alleged incident, he was given no further explanation and immediately disciplined despite being given no information about the alleged incident and despite other younger and non-disabled coworkers not being given a warning for the exact infraction Plaintiff was accused of.

33. On another occasion, Plaintiff wore a themed shirt to work to celebrate a patriotic event. Plaintiff's shirt still prominently displayed Defendants' logo and complied with all of Defendants' dress code policies.

34.     Defendants' policy states that themed shirts, such as the shirt Plaintiff was wearing, must still be approved by management, so employees should always bring their typical uniform to work and can simply change before beginning their shift if their themed shirt is not approved.

35.     When Plaintiff arrived at work, he was told by management that his themed shirt was not approved and that he would need to change. Plaintiff immediately complied and changed into his typical uniform, in accordance with Defendants' policy.

36.     Despite Plaintiff's compliance with Defendants' policy, he was issued a reprimand for allegedly violating Defendants' dress code policy.  Younger, non-disabled employees of Defendants have followed this same procedure and have not been reprimanded for a dress code violation.

37.     Defendants often hyper fixated on Plaintiff's performance in an attempt to nitpick him and find perceived errors in his work.

38.     Approximately one week prior to his termination, Plaintiff was verbally reprimanded for using a clean tissue to wipe away a smudge on an ash tray rather than a clean paper towel.

39.     Plaintiff's concerns were often routinely ignored by Defendants, limiting his ability to perform his job to the best of his ability.

40.     In another instance in the week leading to Plaintiff's termination, Plaintiff saw Laura, a dealer for Defendants, fidgeting with a plastic placeholder. As a dealer supervisor, Plaintiff knew that fidgeting with game pieces at a table is against company policy and sought to correct Laura's action.

7

41.     Plaintiff attempted to correct the behavior by quietly taking the placeholders and placed them in the rack.  Laura inappropriately replied "don't you ever touch that. This is my table."

42.     When Plaintiff calmly tried to explain that Laura's fidgeting was against Defendants' policy and that she cannot speak to Plaintiff in that tone since he is her supervisor, Laura stated that she did not care.

43.     Plaintiff immediately brought this issue to Quarrels's attention and she instructed Plaintiff to have a conversation with Laura about the issue.

44.     However, when Plaintiff asked for a witness and support for when Plaintiff issued a verbal warning to Laura, Quarrels refused and told Plaintiff to "do it yourself."

45.     After Laura continued to be insubordinate with Plaintiff, Plaintiff attempted to inform Quarrels about this conduct.

46.     In response, Quarrels rudely said to Plaintiff "what now?"

47.     Despite Laura's violations of policy and insubordination, she was not reprimanded or issued discipline (or terminated) but management instead launched an investigation against Plaintiff to see if he was bothering a dealer, including reviewing videotape of the incident.

48.     The video, however, confirmed that Plaintiff did not act inappropriately.

49.     Overall, Plaintiff consistently observed Defendants' management treat younger, non-disabled employees more professionally, friendly and fairly.

50. Throughout April 2026, Plaintiff continued to take FMLA-qualifying time off because of his medical conditions, including up to April 15, 2026 (the day before his termination).

51. On or about April 16, 2026, just a few days after Plaintiff used additional FMLA leave and shortly after Plaintiff confided in Defendants about his ongoing medical conditions, Plaintiff was terminated.

52. Defendants claim that Plaintiff was terminated for an alleged incident that occurred on or about April 9, 2026.

53. The alleged reason for Plaintiff's termination is untrue, unworthy of belief and absurd.

54. The alleged incident for which Defendants claim it terminated Plaintiff occurred as follows:

    a. On or about April 9, 2026, Plaintiff was working in his role as a Table Games Supervisor;

    b. While walking through the casino, Plaintiff passed coworkers who were handling a blackjack tournament;

    c. Promotions and Events Coordinator Andrew Vanderslice (*hereinafter* Vanderslice; approximately 40 years old) handed Plaintiff a microphone after Plaintiff jokingly asked to sing something;

    d. Plaintiff sang approximately one or two lines from a song into the microphone, as he was known to do at his table, then continued about his workday;

    e. During Plaintiff's 30-second "singing," he did not say or sing anything inappropriate or offensive;

9

f.  In fact, he sang a few lines of a Frank Sinatra song ("Fly me to the moon"), which was suggested by Vanderslice.  After Plaintiff finished, Vanderslice and a few patrons applauded and thanked Plaintiff;

g.  Vanderslice was not disciplined or terminated for authorizing Plaintiff to sing, handing the microphone to Plaintiff or asking him to sing into the microphone;

h.  Plaintiff continued to satisfactorily perform his job duties, without issue, until April 16, 2026 (when he was terminated).

55. Defendants encourage table games employees to make their role their own by bringing personality to their job, within reason.

56.  Plaintiff worked for Defendants for nearly 16 years as a dealer and table games supervisor, and in that time-span has done just that, building a rapport with many repeat customers and high paying players.

57. Plaintiff has done so by bringing an appropriate amount of levity and fun to the tables he manages. This includes having a positive attitude, energy, small talk, and occasionally singing a line or two from a song while at a table.

58. Plaintiff has always maintained a good relationship with customers and received positive feedback regarding his interactions with customers.

59. Plaintiff merely assumed his singing a line or two into the microphone on April 9, 2026 was no different than the levity he brings to his tables. Additionally, he was approved and encouraged to do so by Vanderslice, another employee of Defendants.

60. On or about April 16, 2026, Plaintiff was terminated by Defendants for alleged "unauthorized use of company equipment" on or about April 9, 2026.

10

61.     Prior to his termination, Plaintiff was never interviewed about said incident, nor was he given any verbal or written warnings regarding said incident.

62.     In terminating Plaintiff for conduct he did not engage in without first issuing him any discipline, Defendants failed to comply with their own disciplinary policy.

63.     Defendants treated younger and non-disabled employees much more favorably than Plaintiff, despite their violations of company policies, as evidenced above.

64.     Defendants have also discriminated against other similarly-situated employees who have requested/taken FMLA leave and/or accommodations.

65.     Upon information and belief, after his termination, Plaintiff was replaced by a younger and non-disabled employee.

66.     Based on the foregoing, Plaintiff believes and avers that he was ultimately terminated from his employment with Defendants in violation of state and federal law.

**COUNT I**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation;**
**[3] Hostile Work Environment)**
**- Against Both Defendants-**

67.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

68.     Plaintiff suffers from qualifying disabilities under the ADA.

69.     Plaintiff informed Defendants about these disabilities and requested accommodations.

70.     Defendants treated Plaintiff rudely and disrespectfully as a result of his medical conditions.

11

71.    Defendants' discriminatory conduct occurred on a repeated basis and worsened over the final six months of Plaintiff's employment.

72.    Plaintiff was offended, humiliated and embarrassed by Defendants' discriminatory treatment of him, as would any reasonable person.

73.    Defendants were aware of this discriminatory treatment and failed to take any remedial action to investigate or address it.

74.    Instead, shortly after Plaintiff's medical conditions worsened and he requested further accommodations, he was terminated.

75.    Plaintiff's actual and/or perceived disabilities and/or requests for further accommodations were a motivating and/or determinative factor in Defendants' decision to terminate his employment.

76.    Plaintiff was subjected to discrimination and a hostile work environment through disparate treatment due to his aforesaid health conditions and requested accommodations.

77.    The foregoing conduct constitutes violations of the ADA.

## COUNT II
## Violations of the Family and Medical Leave Act ("FMLA")
### (Retaliation & Interference)
### - Against Both Defendants –

78.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

79.    Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

12

80.    Plaintiff requested leave for his own serious medical conditions from Defendants, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

81.    Plaintiff had at least 1,250 hours of service with Defendants during the year preceding his requests for FMLA leave.

82.    Defendants are engaged in an industry affecting commerce and employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

83.    Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

84.    Plaintiff requested FMLA-qualifying leave in close temporal proximity and prior to his termination.

85.    Defendants committed interference and retaliation violations of the FMLA by: (1) disciplining and/or terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) considering Plaintiff's FMLA leave needs in making the decision to discipline and/or terminate him; (3) disciplining and/or terminating Plaintiff to intimidate him and/or prevent him from taking FMLA-qualifying leave in the future; (4) failing to properly notify Plaintiff about his FMLA rights and/or failing to properly designate his absences as FMLA-qualifying; (5) engaging in conduct that would dissuade a reasonable person from exercising their FMLA rights.

86.    These actions as aforesaid constitute violations of the FMLA.

13

## COUNT III
## Violations of the Age Discrimination in Employment Act ("ADEA")
### ([1] Age Discrimination; [2] Hostile Work Environment)
### - Against Both Defendants –

87.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

88.     Plaintiff was subjected to a hostile work environment because of his age through disparate treatment.

89.     Plaintiff believes and avers that his age was a motivating or determinative factor in Defendants' decisions to terminate him:

90.     This conduct constitutes violations of the ADEA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.  Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

B.  Plaintiff is to be awarded liquidated and punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C.  Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

14

D.  Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E.  Plaintiff is to be given a jury trial as demanded in the caption of the instant Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq. (91538)
Jeremy M. Cerutti, Esq. (200276)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com
jeremy@karpf-law.com

Dated: July 22, 2026

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Robert Galeski | : | CIVIL ACTION |
| v. | : | |
| Chester Downs and Marina, LLC d/b/a Harrah's Chester Casino and Racetrack, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                    (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                    (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)                    (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.        (x )

| | | |
|---|---|---|
| 7/22/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction:  Defendants place of business

---

*RELATED CASE IF ANY:*  Case Number: _____  Judge: _____

1.  Does this case involve property included in an earlier numbered suit?                    Yes ☐

2.  Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3.  Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4.  Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same    Yes ☐
    individual?

5.  Is this case related to an earlier numbered suit even though none of the above categories apply?    Yes ☐
    If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ is / ☒ is not related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.  *Federal Question Cases:***      **B.  *Diversity Jurisdiction Cases:***

| A. Federal Question Cases | B. Diversity Jurisdiction Cases |
|---|---|
| ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts) | ☐ 1. Insurance Contract and Other Contracts |
| ☐ 2. FELA | ☐ 2. Airplane Personal Injury |
| ☐ 3. Jones Act-Personal Injury | ☐ 3. Assault, Defamation |
| ☐ 4. Antitrust | ☐ 4. Marine Personal Injury |
| ☐ 5. Wage and Hour Class Action/Collective Action | ☐ 5. Motor Vehicle Personal Injury |
| ☐ 6. Patent | ☐ 6. Other Personal Injury (*Please specify*):_____ |
| ☐ 7. Copyright/Trademark | ☐ 7. Products Liability |
| ☐ 8. Employment | ☐ 8. All Other Diversity Cases: (*Please specify*)_____ |
| ☐ 9. Labor-Management Relations | _____ |
| ☒ 10. Civil Rights | |
| ☐ 11. Habeas Corpus | |
| ☐ 12. Securities Cases | |
| ☐ 13. Social Security Review Cases | |
| ☐ 14. Qui Tam Cases | |
| ☐ 15. Cases Seeking Systemic Relief **\*see certification below\*** | |
| ☐ 16. All Other Federal Question Cases. (*Please specify*):_____ | |

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ does / ☒ does not have implications beyond the parties before the court and ☐ does / ☒ does not seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS

GALESKI, ROBERT

**(b)** County of Residence of First Listed Plaintiff: Camden
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

### DEFENDANTS

CHESTER DOWNS AND MARINA, LLC D/B/A HARRAH'S CHESTER CASINO AND RACETRACK, ET AL.

County of Residence of First Listed Defendant: Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | |

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 690 Other | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury – Medical Malpractice | | | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | | ☐ 850 Securities/Commodities/ Exchange |

*(Personal Injury column 2)*
- ☐ 365 Personal Injury – Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES (continued)**
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS |
|---|---|---|
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General |
| ☐ 245 Tort Product Liability | ☒ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** |
| | ☐ 448 Education | ☐ 540 Mandamus & Other |
| | | ☐ 550 Civil Rights |
| | | ☐ 555 Prison Condition |
| | | ☐ 560 Civil Detainee - Conditions of Confinement |

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601); ADEA (29USC621)

Brief description of cause:
Violations of the ADA, FMLA, ADEA and the PHRA.

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE: 7/22/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____